IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAHINE BROWN, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. TJS-18-2205 |
| HOUFF TRANSFER, INC., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

Now pending before the Court are the motions for summary judgment filed by Third-Party Defendant Jalen Anderson ("Anderson") (ECF No. 37) and Defendant Houff Transfer, Inc. ("Houff") (ECF No. 38).[1] Having considered the submissions of the parties, the Court finds that no hearing is necessary. *See* Loc. R. 105.6. For the reasons set forth below, both motions will be denied.

**I.    INTRODUCTION**

The following facts are presented and considered by the Court in the light most favorable to the non-moving parties. On September 23, 2016, Anderson was driving himself and three passengers, including Plaintiff Jahine Brown ("Brown"), in his 1998 Honda Civic on southbound Interstate 83 in Baltimore County, Maryland. Anderson lost control of his vehicle after he passed a tractor-trailer owned by Houff and operated by Neptali Velez, Jr. ("Velez") in the scope of his employment by Houff. Anderson's vehicle drifted from the left lane across the right lane and crashed into the guardrail on the right side of the road. The vehicle then bounced back onto the

---

[1] On January 7, 2019, this case was referred to me for all proceedings pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF No. 19.)

1

roadway and into the path of the tractor-trailer driven by Velez. Velez applied his brakes and attempted to avoid a collision with Anderson's vehicle, but the tractor-trailer struck Anderson's vehicle. One of the passengers of Anderson's vehicle, Corey Losch, was killed in the collision. This lawsuit stems from the non-life-threatening injuries that Brown sustained as a passenger in Anderson's vehicle at the time of the collision.

Brown made a claim against Anderson for his injuries. After that claim was resolved, on May 29, 2018, Brown filed this lawsuit against Houff and State Farm in the Circuit Court for Prince George's County, Maryland. (ECF No. 1-2.) In Count I of the Complaint, Brown asserts a negligence claim against Houff. In Count II, Brown asserts a breach of contract claim against State Farm pursuant to the underinsured motorist provision of his insurance policy. The case was removed to this Court by Houff on July 18, 2018. (ECF No. 1.) Once the case was removed to this Court, State Farm filed a crossclaim against Houff seeking indemnification and contribution (ECF No. 14), and Houff filed a third-party complaint against Anderson for contribution (ECF No. 27). A scheduling order was entered on December 11, 2018. (ECF No. 16.) After several modifications of the schedule, discovery closed on August 23, 2019. (ECF No. 34.) Thereafter, the parties filed their motions for summary judgment (ECF Nos. 37 & 38).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be

denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest upon the mere allegations or denials of its pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

## III. DISCUSSION

Since this Court's jurisdiction is based on diversity of citizenship, the principles outlined in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require the application of state law to questions of substantive law. Maryland adheres to the *lex loci delicti* rule to determine the applicable law in tort actions. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744 (2000). Under this rule, the "substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 123 (1983). Because the alleged tort took place in Maryland, Maryland law governs Brown's negligence claim.[2]

In Maryland, the elements of a negligence claim are "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from

---

[2] The Court is not required to address Brown's breach of contract claim in this opinion.

3

the defendant's breach of the duty." *Chicago Title Ins. Co. v. Allfirst Bank*, 394 Md. 270, 290 (2006). The driver of a motor vehicle must use reasonable care. *Malik v. Tommy's Auto Serv., Inc.*, 199 Md. App. 610, 617 (2011) ("[A] driver is negligent if he or she does not use reasonable care, that is, the caution, attention, or skill of a reasonable person in similar circumstances."). Brown alleges that Houff "negligently failed to keep proper control of [its] vehicle, negligently failed to keep a proper lookout for other vehicles, negligently failed to control the speed of the truck, and was otherwise careless and negligent," and that such negligence was a proximate cause of Brown's injuries. (ECF No. 1-2 ¶ 5.)

### A. Houff's Motion for Summary Judgment

Houff raises four arguments in its motion. First, it argues that "there is no evidence that [Houff's] driver could have avoided this collision, or that he was otherwise negligent." (ECF No. 38-1 at 11.) Second, it argues that there is no evidence that Brown's injuries were caused by the collision with Houff's tractor-trailer as opposed to the initial collision when Anderson's vehicle struck the guardrail. (*Id.* at 12.) Third, it argues that Brown cannot recover any damages in connection with his grief over the loss of his friend, Corey Losch. (*Id.*) Fourth, it argues that if the Court awards summary judgment to Houff in connection with Plaintiff's claims, State Farm's crossclaim will no longer be viable.

Houff's chief argument is that Velez was not negligent because he did not breach any duty owed to Plaintiff and that, necessarily, no injury to the Plaintiff was proximately caused by any breach of a duty by Houff. (ECF No. 38-1 at 14.) In support of this argument, Houff has

submitted evidence from its expert accident reconstructionist, David Plant ("Mr. Plant").[3] (ECF No. 38-4.) In his report, Mr. Plant opines, "to a reasonable degree of scientific certainty that Mr. Velez, who was traveling below the speed limit, did NOT have an opportunity to avoid this accident." (*Id.* at 12.) Relying on Mr. Plant's opinion, Houff argues that its driver cannot be said to have breached any duty to Brown, and that it is therefore entitled to judgment as a matter of law on Brown's negligence claim. While Brown and State Farm oppose Houff's motion, they have made no effort to submit any evidence to rebut Mr. Plant's opinion. In addition, they have not argued that Mr. Plant's opinion should be excluded from evidence.

According to the Affidavit attached to Mr. Plant's expert report (ECF No 38-4 at 1), Mr. Plant is a mechanical engineer and a Registered Professional Engineer in Maryland and "an experienced motor vehicle accident reconstructionist." Mr. Plant's *curriculum vitae* (*id.* at 3-6) documents his extensive experience as a mechanical engineer and accident reconstructionist and notes that he has provided expert testimony in four federal district courts and more than twenty state trial courts. As noted above, neither Brown nor State Farm have presented any challenge to Mr. Plant's qualifications as an expert.

According to Mr. Plant's report, he inspected the scene of the collision on September 25, 2016, two days after it occurred. (ECF No. 38-4 at 10.) During his inspection, he "took photographs and forensically mapped the scene," and then made a scale drawing of the scene. (*Id.*) Consistent with a police report created on the date of the collision, Mr. Plant describes the collision scene as consisting of "two southbound lanes, a left shoulder of about 3.5 feet in width and right shoulder [of] about 11 feet wide," and a "roadway curved to the left [with] a downhill

---

[3] Houff states that it "issued a Rule 26(a)(2) Expert Disclosure naming, among others, David Plant, P.E., ACTAR." (ECF No. 38-1 at 8.) Houff did not attach a copy of its expert disclosure, but the parties opposing Houff's motion do not challenge Houff's representation that it properly designated Mr. Plant as an expert witness.

grade of about 1 degree." (*Id.*) The speed limit in the area of the collision was 65 mph. Mr. Plant noted that, from his review of the police report, "there were no defects to the road condition, the weather was clear, [and] it was daylight" at the time of the collision. None of the parties contest the accuracy of Mr. Plant's rendering of the collision scene.

Mr. Plant inspected Houff's tractor on September 25, 2016. At that time, the tractor was parked in a parking lot adjacent to the scene of the collision. During his inspection, Mr. Plant took photographs and measurements of the tractor, and downloaded the vehicle's "event data." (*Id.*) Mr. Plant inspected the trailer on September 27, 2017, and took photographs and measurements of the trailer. Using his measurements, he created a scale drawing of the tractor-trailer. (*Id.*) On October 13, 2016, Mr. Plant inspected Anderson's Honda Civic, which was located at the Maryland State Police Golden Ring Barracks. He took photographs and measurements of the Honda, which he used to create a scale drawing. (*Id.*at 11.)

Mr. Plant's report states that Houff's tractor was equipped with a "Heavy Vehicle Event Data Recorder, which recorded the two most recent Hard Braking events and one Last Stop Record (i.e., data relating to the last time the vehicle stopped." (*Id.*) Based on its time and the mileage reading on the tractor's odometer, Mr. Plant determined that "Hard Braking event #1" related to the collision in this case. (*Id.*) The event data for "Hard Braking event #1" indicates that "for the 60 seconds before triggering the hard-braking event, the tractor was traveling at or below 65 mph (i.e., the speed limit) and several seconds before the trigger was traveling at 63.5 mph." In addition, the event data indicates that the tractor was governed to a maximum speed of 65 mph.

Using the weight of the tractor-trailer at the time of the collision (77,900 lbs.), the speed of the tractor-trailer in the seconds prior to "Hard Braking event #1," the "average perception

response for a path intrusion hazard" that Mr. Plant derived from using "Interactive Driver Response Research (I.DRR) software," and the 1-degree downhill grade of the roadway, Mr. Plant determined that "the total stopping distance for a tractor trailer from a speed of 63.5 mph is between 390 feet . . . and 521 feet." (ECF No. 38-4 at 11.) This calculation is based on two assumptions, neither of which are challenged by Brown or State Farm. These assumptions are that (1) "the average perception response for a path intrusion hazard (i.e., such as the Honda entering the path of the tractor trailer) will be 1.9 seconds with an 85th percentile time of 2.6 seconds," and that (2) "a tractor trailer decelerates at a rate of between 0.5g and 0.65g." (*Id.*)

According to Mr. Plant's report, "there are two components to a stopping distance; a perception-response distance and a braking distance." (*Id.*) Mr. Plant states that given the average perception response of 1.9 seconds to 2.6 seconds, Houff's tractor trailer would have traveled between 177 and 242 feet between the time that Anderson's vehicle entered the tractor trailer's path and the time that Velez applied the brakes. (*Id.*) Once Velez applied the brakes, the vehicle would have traveled an additional distance of between 213 and 279 feet. (*Id.*) Mr. Plant states that "the tractor trailer would have been located between 334 and 354 feet from the area of impact when the Honda lost control." (*Id.*) Because the total stopping distance of the tractor-trailer was between 390 and 521 feet, and because this is a greater distance than the distance between the area of the collision and Houff's tractor-trailer when Anderson's vehicle lost control, Mr. Plant concludes that Velez could not have stopped in time to avoid the collision. (*Id.*)

At this stage of the proceedings, the Court is not persuaded by Houff's argument. Even assuming that the assumptions upon which Mr. Plant's opinion relies are accurate, a reasonable jury could still conclude that Houff's driver was negligent. A reasonable jury could find that

Velez was following Anderson's Honda too closely before the Honda lost control. As stated in Mr. Plant's report, "Mr. Velez stated to police that his tractor trailer was located 100 feet from the Honda when it lost control." (ECF No. 38-4 at 12.) Given the rate of speed at which Velez was travelling and considering that the tractor-trailer weighed more than 38 tons, a reasonable jury might find that Velez should have left a greater distance between his truck and the car in front of him. By failing to do so, a reasonable jury might conclude that Velez negligently followed Anderson's Honda too closely after he was passed but before the Honda spun out of control. A reasonable jury could conclude that if Velez had left more space between his truck and Anderson's Honda, he might have been able to keep his truck under proper control when the Honda lost control.

Houff has presented a persuasive case that Velez could not have avoided this collision at the moment that Anderson's Honda lost control. The arguments presented by Brown and State Farm to the contrary are weak and unsupported.[4] Nonetheless, the Court is compelled to conclude that a reasonable jury properly applying Maryland law could find in Brown's favor because such a jury could conclude that if Velez had not been following Anderson's Honda so closely, he would have been able to avoid the collision when the Honda ultimately lost control. For this reason, the Court cannot award summary judgment to Houff on the basis of its first argument.

Houff's second argument is that it is entitled to summary judgment because there is no evidence that Brown's injuries were caused by the collision with Houff's tractor-trailer, as opposed to the initial collision of Anderson's Honda with the guardrail. The Court is not

---

[4] The Court rejects Plaintiff's argument that it would be inappropriate for the Court to rely on Mr. Plant's unrebutted expert opinion at this stage. Although Mr. Plant's opinion does not provide sufficient evidence for the Court to award summary judgment to Houff, the opinion was properly before the Court under Fed. R. Civ. P. 56(e).

persuaded by this argument. Viewed in the light most favorable to the non-moving parties, a reasonable jury could conclude that Brown's injuries were caused by a collision with a 38-ton tractor-trailer travelling at about 65 mph, and not by the Honda's "glancing collision" with the guardrail. (*See* ECF No. 42 at 6.) Even if Brown has not designated an expert to testify that his injuries were caused by the collision with Houff's tractor trailer and not by the collision with the guardrail, a jury could properly conclude that Brown injuries were caused by the collision with Houff's tractor-trailer based on evidence of the nature of each collision. For these reasons, the Court rejects Houff's second argument.

Houff's third argument is that Brown cannot recover damages for emotional distress because Mr. Losch was not a member of his immediate family. In support of its argument, Houff cites cases from other jurisdictions in which courts have held that a plaintiff may not recover for emotional injuries in connection with a bystander claim unless the plaintiff and the primary victim are closely related. Houff also argues that Maryland's wrongful death statute closely limits and defines beneficiaries, which suggests that similar common law claims should be limited as well. (ECF No. 38-1 at 21.) In his opposition brief, Brown notes that he "is not seeking relief as a wrongful death beneficiary or under Maryland's survival statute." (ECF No. 42 at 8.) Given the absence of any statute restricting Brown's right to recover damages for his emotional distress under the circumstances of this case, and the lack of any persuasive precedent on this issue, the Court concludes that Houff is not entitled to summary judgment as to Brown's emotional distress damages.

Houff's fourth argument is that State Farm's crossclaim against Houff cannot be sustained to the extent that Brown cannot recover against Houff. Because the Court concludes

that Houff is not entitled to summary judgment on Plaintiff's claims, this argument must be rejected.

**B.     Anderson's Motion for Summary Judgment**

In his Motion for Summary Judgment (ECF No. 37), Third-Party Defendant Jalen Anderson argues that he is entitled to judgment as a matter of law on Houff's Third Party Complaint, which asserts a contribution claim against him. He argues that Houff's contribution claim is barred because of a release that was executed by Brown as part of his settlement with Anderson. Houff opposes Anderson's motion.

The equitable doctrine of contribution provides "for the distribution of loss among culpable parties in accordance with their proportionate shares." *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md. App. 217, 280 (1996), *aff'd*, 346 Md. 122 (1997). As set forth in the Maryland Uniform Contribution Among Joint Tort-Feasors Act ("UCATA"), Md. Code, Cts. & Jud. Proc. ("C.J.") §§ 3-1401 to 3-1409, "the right of contribution exists among joint tort-feasors." C.J. § 3-1402(a). "Joint tort-feasors" are defined under the UCATA as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." C.J. § 3-1401(c). If an injured person releases one joint tort-feasor from liability, that release

> does not discharge the other tort-feasors unless the release so provides, but it reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

C.J. § 3-1404. The UCATA further provides that if an injured person releases one joint tort-feasor from liability, that "does not relieve the joint tort-feasor from liability to make contribution to another joint tort-feasor" unless two conditions are met. C.J. § 3-1405. First, the release must have been "given before the right of the other tort-feasor to secure a money

judgment for contribution has accrued." *Id.* Second, the release must provide "for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors." *Id.*

In support of its motion, Anderson has submitted a document titled "RELEASE IN FULL OF ALL CLAIMS" (the "Settlement Agreement"). (ECF No. 37-2.) The Settlement Agreement is dated January 12, 2018. In the Settlement Agreement, Brown releases Douglas Clark and Jalen Anderson from liability related to "an accident that occurred on or about the 23rd day of September, 2016." (*Id.*) The Settlement Agreement contains a handwritten annotation that is difficult to read, but Anderson has transcribed it to provide

> that all damages recoverable by me against Hough Transfer are hereby reduced to the extent of the statutory pro rata share of these terms under the Uniform Contribution Among Joint Tortfeasors Act of MD, of all such damages so recoverable by me against all other Joint Tortfeasors.

(ECF No. 37-1 at 5.) Anderson argues that the release provides that if "Houff is found to be a tort-feasor, its liability to Plaintiff Brown will be contractually reduced according to the terms of the Joint Tortfeasor Release[], and Houff will receive the benefit of Mr. Anderson's settlement to Plaintiff Brown." (*Id.* at 5-6.) Accordingly, Anderson argues, since Houff will never have to pay more than its *pro rata* share of any judgment, it will never obtain a right of contribution against Anderson. (*Id.* at 6.)

Houff argues that Anderson is not entitled to summary judgment on its contribution claim for several reasons. First, the release expressly denies Anderson's liability. (ECF No. 41-1 at 5.) Second, the release does not "provide[] for a reduction, to the extent of the *pro rata* share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors." *See* C.J. § 3-1405. Further, because both Anderson and Douglas Clark are named as releasees, the release does not make clear "whether separate *pro rata* shares would be attributed to each of

11

Mr. Anderson and Mr. Clark, or perhaps only as to Mr. Anderson." (ECF No. 41-1 at 6.) Third, for the reasons set forth above, Anderson argues that the release does not constitute a joint tort-feasor release under the UCATA. (*Id.* at 6-7.) Instead, Anderson argues the release is properly considered a *Swigert* release, which would not extinguish Houff's right to contribution. For this argument, Houff relies on *Mercy Medical Center v. Julian*, 429 Md. 348 (2012). There, the Court of Appeals held that

> [i]n the absence of an adjudication that the released party is liable as a joint tort-feasor, a release has only evoked the [UCATA], so as to extinguish contribution liability, when it has included an admission of the released defending party's joint tort-feasor status.

*Id.* at 369. "By contrast, a release that does not address the liability of the released defending party, and conditions the reduction in the damages recoverable required under Section 3-1405(2), complies with this provision only "if [the released party] is a tortfeasor." *Id.* (quoting *Swigert v. Welk*, 213 Md. 613, 618 (1957)). In the absence of an admission of joint tort-feasor status or an adjudication of the defending party's liability, a conditional release does not comply with § 3-1405 of the UCATA and, consequently, does not extinguish a non-settling joint-tortfeasor defendant's right to contribution. *Id.* at 374.

The Court finds that Anderson is not entitled to summary judgment because the Settlement Agreement does not contain an admission that he is a joint tort-feasor. Because the Settlement Agreement does not contain an admission of Anderson's status as a joint tort-feasor, and because there has not yet been any adjudication as to Anderson's joint tort-feasor status, Houff's right to contribution is not extinguished. *See Julian*, 429 Md. at 369 (reaffirming that "a party must have been adjudicated liable or have admitted to joint tort-feasor status for the Act, and of course, Section 3-1405, to apply at all"). For this reason alone, Anderson is not entitled to summary judgment on Houff's contribution claim. The Court declines to address Houff's other

arguments regarding the ambiguity of the release language. Anderson's Motion for Summary Judgment (ECF No. 37) will be denied.

## IV. CONCLUSION

For the reasons set forth above, Defendant Houff Transfer, Inc.'s Motion for Summary Judgment (ECF No 38) is **DENIED** and Third-Party Defendant Jalen Anderson's Motion for Summary Judgment (ECF No. 37) is **DENIED**. An accompanying Order will follow.

<u>February 11, 2020</u>  
Date

      <u>/s/</u>  
Timothy J. Sullivan  
United States Magistrate Judge